899 P.2d 613

**DYNACON, INC., Plaintiff–Appellee,**

v.

**D & S CONTRACTING, INC., a New Mexico corporation, Defendant–Appellant.**

**No. 15,702.**

Court of Appeals of New Mexico.

June 2, 1995.

---

William R. Babington, Jr., Sager, Curran, Sturges & Tepper, P.C., Las Cruces, for plaintiff-appellee.

Ann Yalman, Santa Fe, for defendant-appellant.

## OPINION

HARTZ, Judge.

D & S Contracting, Inc., (Contractor) appeals a summary judgment holding that it could not substitute roofing subcontractors on a public works contract. This appeal presents our first opportunity to interpret New Mexico's Subcontractors Fair Practices Act (the Act), NMSA 1978, §§ 13-4-31 to -43 (Repl.Pamp.1992). By requiring prime contractors who bid on a public works project to disclose the subcontractors they will use on the project, the Act restricts the practices known as bid shopping and bid peddling. "Bid shopping is the use of the low bid already received by the general contractor to pressure other subcontractors into submitting even lower bids. Bid peddling, conversely, is an attempt by a subcontractor to undercut known bids already submitted to the general contractor in order to procure the job." *Southern Cal. Acoustics Co. v. C.V. Holder, Inc.*, 71 Cal.2d 719, 79 Cal.Rptr. 319, 325 n. 7, 456 P.2d 975, 981 n. 7 (1969) (en banc).

These practices have been widely condemned as contrary to the interests of both subcontractors and the public. *See id.; In re Beers Constr. Co.*, 43 Comp.Gen. 206, 207

(1963) (General Services Administration has reported that bid shopping results in selection of subcontractors of questionable competence and responsibility and detracts from a truly competitive market among subcontractors, thus imposing greater costs on the government). Our legislature has expressed its condemnation in Section 13–4–32, which states:

The legislature finds that the practices of bid shopping and bid peddling in connection with the construction, alteration and repair of public works projects often result in poor quality of material and workmanship to the detriment of the public, deprive the public of the full benefits of fair competition among contractors and subcontractors and lead to insolvencies and loss of wages to employees.

The Act precludes bid shopping and peddling after a contract is awarded by providing that (1) the prime contractor must list in its bid the subcontractors who will be working on the project and (2) the prime contractor then must use the listed subcontractors except in certain enumerated circumstances. The listing requirement is set forth in Section 13–4–34, which states:

A. Any using agency [1] taking bids for any public works construction project shall provide in the bidding documents prepared for that project a listing threshold which shall be five thousand dollars ($5,000) or one-half of one percent of the architect's or engineer's estimate of the total project cost, whichever is greater. Any person submitting a bid shall in his bid set forth:

(1) the name and location of the place of business of each subcontractor under subcontract to the contractor [2] who will perform work or labor or render service to the contractor in or about the construction of the public works construction project in an amount in excess of the listing threshold; and

(2) the nature of the work which will be done by each subcontractor. The contractor shall list only one subcontractor for each category as defined by the contractor in his bid.

B. A bid submitted by any person which fails to comply with the provisions of Subsection A of this section is a non-responsive bid which shall not be accepted by a using agency.

Section 13–4–36 governs substitution of subcontractors. It reads:

A. No contractor whose bid is accepted shall substitute any person as subcontractor in place of the subcontractor listed in the original bid, except that the using agency shall consent to the substitution of another person as a subcontractor in the following circumstances:

(1) when the subcontractor listed in the bid, after having had a reasonable opportunity to do so, fails or refuses to execute a written contract, when such written contract, based upon the general terms, conditions, plans and specifications for the project involved and the terms of such subcontractor's written bid, is presented to him by the contractor;

(2) when the listed subcontractor becomes bankrupt or insolvent;

(3) when the listed subcontractor fails or refuses to perform his subcontract;

(4) when the contractor demonstrates to the using agency or its duly authorized officer that the name of the subcontractor was listed as the result of an inadvertent clerical error;

(5) when a bid alternate accepted by the using agency causes the original low subcontractor's bid not to be low;

(6) when the contractor can substantiate to the using agency that a listed subcontractor's bid is incomplete; or

. (7) when the listed subcontractor fails or refuses to meet the bond requirements of the contractor.

B. Prior to approval of the contractor's request for such substitution, the using agency shall give notice in writing to the

---

1. A "using agency" is "any state agency or local public body requiring services or construction." Section 13–4–33(E).

2. A "contractor" is "the prime contractor on a public works construction project who contracts directly with the using agency." Section 13–4–33(A).

listed subcontractor of the contractor's request to substitute and of the reasons for such request. Such notice shall be served by certified or registered mail to the last known address of the subcontractor. The listed subcontractor who has been so notified has five working days within which to submit written objections to the substitution to the using agency. Failure to file such written objections shall constitute the listed subcontractor's consent to the substitution. If written objections are filed, the using agency shall give at least five working days notice in writing to the listed subcontractor of a hearing by the using agency on the contractor's request for substitution.

C. No contractor whose bid is accepted shall permit any such subcontract to be voluntarily assigned or transferred or allow it to be performed by anyone other than the original subcontractor listed in the original bid without the consent of the using agency.

D. No contractor whose bid is accepted, other than in the performance of change orders causing changes or deviations from the original contract, shall sublet or subcontract any portion of the work in excess of the listing threshold as to which his original bid did not designate a subcontractor unless the contractor fails to receive a bid for a category of work. Under such circumstances, the contractor may subcontract. The contractor shall designate on the listing form that no bid was received.

A listed subcontractor who is replaced in violation of the Act may sue in district court for damages, an injunction, or other relief. Section 13–4–41(D).

## I. FACTUAL BACKGROUND

The material facts are undisputed. In February 1993 Gadsden Independent School District No. 16 (Gadsden) issued requests for bids for remodeling work on two schools. The Instructions to Bidders referred to two bid lots. Bid Lot #1 was described as "REMODELING" and Bid Lot #2 was described as "PARAPET COVERS AND ITEMS NOTED." The instructions informed bidders that Gadsden would award either Bid Lot #1 or the two bid lots combined, but not Bid Lot #2 alone. Paragraph 12F of the Instructions to Bidders stated:

F. Subcontractor's Fair Practices Act:

Bidders must list on the bidding documents all subcontractors whose bid exceeds $15,000. If the subcontractors change according to bid lots accepted, list the subcontractors and the bid lots where they are to be used. All subcontractors must be licensed by the State of New Mexico for the work they perform.

Contractor's bid contained the following entry:

| Nature of Work By Subcontractor | Subcontractor's Name & Address | Used on Bid Lots # |
| --- | --- | --- |
| Roofing | Dynacon | Lots 1 & 2 |

The bid listed no other roofing subcontractor.

On March 12, 1993 Gadsden awarded the contract for the project to Contractor. The project included only the items in Bid Lot #1. Contractor then wrote Gadsden to request that Frontier Roofing be substituted for Dynacon, Inc. (Subcontractor) as the roofing subcontractor. According to Contractor, Frontier had submitted to Contractor the low roofing bid for Bid Lot #1 alone, while Subcontractor had submitted the low bid for the combined bid lots. Contractor contended that it was prohibited from listing more than one roofing subcontractor in its bids because Section 13–4–34(A)(2) requires that "[t]he contractor shall list only one subcontractor for each category as defined by the contractor in his bid." As a result of Gadsden's award of the contract on just Bid Lot #1, instead of the two bid lots combined, Contractor believed that it was entitled to substitute Frontier for Subcontractor. It relied on Section 13–4–36(A)(5), which states that "when a bid alternate accepted by the

using agency causes the original low subcontractor's bid not to be low," the using agency must consent to the replacement of the listed subcontractor by the subcontractor who submitted the low bid for the accepted bid alternate.

Subcontractor objected to being replaced by Frontier. After an informal hearing Gadsden disallowed the substitution of subcontractors. Nevertheless, Contractor entered into an agreement with Frontier. Subcontractor filed suit in district court for damages; Contractor counterclaimed for a declaratory judgment that it had acted in accordance with the Act. The district court granted Subcontractor a summary judgment. Contractor appeals, contending that it should prevail under its interpretations of Sections 13–4–34(A)(2) and 13–4–36(A)(5), or that at least there is a fact issue precluding summary judgment against it.

## II. DISCUSSION

### A. Section 13–4–34(A)(2)—Listing Subcontractors

■ We first address Contractor's contention that if it had listed two roofing subcontractors—namely, (1) Frontier as the roofing subcontractor if only Bid Lot #1 were awarded and (2) Subcontractor as the roofing subcontractor if Bid Lots #1 and #2 combined were awarded—it would have violated the Section 13–4–34(A)(2) requirement that it "list only one subcontractor for each category as defined by the contractor in his bid." We hold that there would have been no violation. Although there was only one invitation for bids and Contractor submitted only one document in response to the invitation, Contractor in substance submitted two distinct bids. One bid was for Bid Lot #1 only, the other was for Bid Lots #1 and #2 combined. For each bid Contractor could have, and should have, listed the subcontractor who would perform each category of work to be subcontracted out by Contractor.

Gadsden itself interpreted the Act in that fashion. As already noted, Paragraph 12F of the Instructions to Bidders specifically stated: "If the subcontractors change according to bid lots accepted, list the subcontractors and the bid lots where they are to be used." We think that Gadsden's interpretation of the Act comports with the statutory intent.

The clear purpose of the statutory requirement that a bid list only one subcontractor per category is to prevent bid shopping and peddling. If a contractor's bid could list more than one subcontractor for a particular category of work, then after award of the contract the contractor could bid shop among those listed and a listed subcontractor could bid peddle. No such problem arises, however, when each listed subcontractor is identified with a different bid lot or combination of bid lots. In that event, the subcontractor is unambiguously determined once the using agency has awarded the contract to the contractor. *See Prismatic Dev. Corp. v. Somerset County Bd. of Chosen Freeholders*, 236 N.J.Super. 158, 564 A.2d 1208, 1210–12, *cert. denied*, 118 N.J. 205, 570 A.2d 965 (1989), *overruled on other grounds by Meadowbrook Carting Co. v. Borough of Island Heights*, 138 N.J. 307, 650 A.2d 748 (1994). To be sure, this interpretation of the Act presents the possibility that the contractor would have to list a number of different roofing subcontractors when the using agency requests bids on several combinations of bid lots. Yet, the possibility of additional paperwork is not a sound reason to reject the interpretation. The burden on the contractor is not substantial. After all, before submitting its bids the contractor presumably needed to know the low bids from the various subcontractors on each of the combinations of bid lots.

### B. Section 13–4–36(A)(5)—Bid Alternates

■ More troubling is Contractor's reliance on Section 13–4–36(A)(5), which states that the contractor may make a substitution for a listed subcontractor "when a bid alternate accepted by the using agency causes the original low subcontractor's bid not to be low." Contractor's argument is as follows: There were two bid alternates in this case. Gadsden asked for bids on (1) Bid Lot #1 alone and (2) Bid Lots #1 and #2 combined. Gadsden then had the choice of awarding a contract on one of the alternates. Contractor's bid clearly stated that Subcontractor

would do the work if the alternate selected was Bid Lots #1 and #2 combined. When Gadsden, rather than awarding the contract on Bid Lots #1 and #2, awarded the contract on the alternate bid of Bid Lot #1, Subcontractor was no longer the low-bid subcontractor for the roofing work. Although Subcontractor had submitted to Contractor the low bid for the roofing work on the combined bid lots, Frontier had submitted the low roofing bid for Bid Lot #1 alone. Thus, the "bid alternate accepted by [Gadsden] cause[d] the original low subcontractor's bid not to be low."

We find Contractor's argument unconvincing. First, we question whether Contractor's bid stated that Subcontractor was to be the roofing subcontractor only for the combined Bid Lots #1 and #2. The bid form submitted by Contractor indicated that the bid lots on which Subcontractor would be used were Bid Lots #1 and #2. The form is ambiguous as to whether Subcontractor was to be the roofing subcontractor if only Bid Lot #1 was to be awarded. Given the language of Paragraph 12F of the Instructions to Bidders, the most reasonable interpretation of the entry in the bid form is that Subcontractor was to do any of the roofing work if a contract was awarded to Contractor.[3]

In any event, Contractor does not explain how one is to distinguish between a bid and a bid alternate. If the using agency requests bids on more than one bid lot, are all the bids "bid alternates"? If not, which bid is the "base bid," the one bid that is not a "bid alternate"? Is it the bid for the bid lot labeled "Bid Lot #1," or is it the bid for the greatest number of combined bid lots? The contractor submitting the bid could avoid the Act's restrictions on substitution of subcontractors by simply contending that the bid actually awarded was a "bid alternate" and therefore the contractor should be entitled to substitute a lower bidding subcontractor.

Even if the contractor does not have complete freedom to select which alternative should be deemed the base bid, Contractor's interpretation of Section 13–4–36(A)(5) would

create a massive breach in the Act's defenses against bid shopping and peddling. When a using agency decided to request bids on more than one bid lot, at most only one bid lot or combination of bid lots would be considered the base bid. The remainder would be bid alternates. The Act's purpose could be evaded whenever the contract was awarded on a bid alternate, because the contractor who won the bidding could substitute for the listed subcontractor, perhaps as a result of bid shopping or peddling. Contractor's interpretation of Section 13–4–36(A)(5) might make sense if contractors could not list a different subcontractor for each bid lot or combination of bid lots. But, as already discussed, Section 13–4–34(A)(2) permits such multiple listings.

Contractor contends that there is no real risk of bid shopping or peddling when a contractor is substituted under its interpretation of Section 13–4–36(A)(5), because the Act provides for a hearing before the using agency at which the agency can determine whether such practices occurred. Contractor points to the evidence it presented to Gadsden indicating that its substitution for Subcontractor was based on a bid Frontier had submitted for the roofing subcontract before Contractor submitted its own bid to Gadsden. Although Contractor's argument has some appeal on the facts of this case, the argument amounts to a rejection of the entire statutory scheme. If the legislature believed that the hearing before the using agency would be adequate to determine whether or not there had been bid shopping or peddling, then there would be little point to listing subcontractors in the first instance. The using agency would simply make an individualized determination in each case regarding whether bid shopping or peddling had occurred. The Act's listing requirement, however, together with the strict limitation on substitution of subcontractors, establishes that the legislature was not willing to rely on after-the-fact inquiries into bid shopping or peddling. Rather, the legislature adopted prophylactic measures which greatly reduce the

---

**3.** Because our affirmance does not rely on an interpretation of Contractor's listing of Subcontractor, we need not decide whether it would be appropriate to reach such an interpretation on summary judgment.

opportunity for bid shopping or peddling and thereby avoid the delay and expense of fact-finding regarding the existence of those practices. We should resist adopting an interpretation of Section 13–4–36(A)(5) that undermines the value of those prophylactic measures.

Yet, one consideration makes us pause before rejecting Contractor's construction of Section 13–4–36(A)(5). That consideration is the difficulty in attributing a meaning to "bid alternate." If a "bid alternate" is not a bid lot or lots other than the base bid, then what is a "bid alternate"?

The district court suggested one possibility. The district court construed "bid alternate" to mean "alternative methods of performing the work within a Bid lot (one specific project) to be performed for the bid price." It suggested as an example of a bid alternate "a provision [in the instructions to bidders] which would allow the contractor to provide a built-up roof or alternatively a foamed roof."

Our search of the pertinent literature offers little assistance in interpreting Section 13–4–36(A)(5). Counsel have not directed us to similar language in any comparable statute of another jurisdiction, nor have we found any. We have, however, found other authority that may suggest what our legislature intended. In summarizing the situation before it, the United States Court of Claims stated in *Brown & Son Electric Co. v. United States*, 325 F.2d 446, 447, 163 Ct.Cl. 465 (Fed.Cir.1963):

> The invitation called for proposals on certain electrical and construction work designated as the base work; in addition, bids were requested on a number of additive alternate items which were to "be awarded at the option of the Government contingent upon availability of funds." The invitation stated that the "award will be made on the lowest responsive Base Bid," but also required that bids be entered for both the base bid and all additive alternates.

Thus, the contractor would be selected without reference to the bids on the additive alternates, but the government agency might, if funds became available, request such additional work and would hold the contractor to the price bid. *See In re Gray-co Builders*, 37 Comp.Gen. 529 (1958). If such a circumstance arose under New Mexico law, presumably the contractors submitting bids would not need to list subcontractors for the additive alternates, because the contractor would not be selected on the basis of bids for that work. Nevertheless, if the using agency decided to go ahead with an additive alternate, the contractor might establish that the lowest subcontracting bid it received for the alternate had come from a subcontractor other than the one listed for the base bid. In that event the contractor could seek relief under Section 13–4–36(A)(5).

Another possibility is that a "bid alternate" is a bid submitted by a contractor but not requested by the invitation to bid. Modifying the district court's example, the using agency may request bids for a built-up roof but the contractor submits bids for both a built-up roof and a foam roof. When the low bidder on the invited bid submits such a bid alternate that would also have been the low bid, it may be lawful for the using agency to award a contract on the bid alternate. *See In re L.B. Foster Co.*, B–222593, 86–2 CPD 191, 1986 WL 63946 (C.G.) (1986); *Paul W. Speer, Inc.*, 62 B.C.A. (CCH) ¶ 3462, 1962 WL 630 (1962); 1B John C. McBride & Isidore H. Wachtel, *Government Contracts* § 10.170 (1994). In that circumstance Section 13–4–36(A)(5) may permit replacement of the subcontractor listed for the work described in the contractor's invited bid.

Although Section 13–4–36(A)(5) is not a model of clarity and we cannot be certain of its meaning, we can be confident of what it does not mean. A "bid alternate" cannot be a bid for which the subcontractors must be listed in accordance with Section 13–4–34(A)(2)—such as a responsive bid to an invitation that states that the contract may be awarded on the basis of the bid. To adopt the meaning suggested by Contractor would be to assume that the legislature enacted a provision that would substantially undercut the statutory scheme and the purpose of the Act articulated in Section 13–4–32. We must reject Contractor's construction of Section 13–4–36(A)(5) and therefore reject its appeal.

### C. Genuine Issue of Material Fact

■ Summary judgment should be granted only when "there is no genuine issue as to any material fact." SCRA 1986, 1–056(C) (Repl.1992). Contractor contends that the district court's grant of summary judgment to Subcontractor was improper because there were two genuine issues of material fact in dispute: "1) whether Bid Lot #1 and Bid Lots #1 and #2 combined are 'bid alternates' under the Act, and 2) whether roofing is a 'category' under the Act." We disagree. The meaning of statutory language is a matter of law, not a question of fact. *See Mutz v. Municipal Boundary Comm'n,* 101 N.M. 694, 697–98, 688 P.2d 12, 15–16 (1984).

■ We recognize that our interpretation of technical language in a statute can and should be informed by evidence concerning how those technical terms are interpreted by experts in the pertinent field. If, for example, those intimately involved in bidding on construction contracts had a common understanding of the term "bid alternate" in a context that would be probative of the meaning of the term in the Act, a court would benefit by learning of that common understanding. A trial court may even wish to conduct a hearing to take evidence on a term's usage. Nonetheless, the meaning of a statutory term is not a matter for trial, and the existence of contradictory testimony concerning usage of a term does not preclude the trial court from construing the statutory language when deciding a motion for summary judgment. We note that before the district court ruled on the motion for summary judgment neither party requested an opportunity to present further evidence regarding usage. Nor has either party suggested on appeal that it would have more to offer in this regard if we were to remand to the district court to permit supplementation of the record.

To the extent that there is already expert testimony in the record, we find it unhelpful in our task of statutory interpretation. For example, the only statement on behalf of Contractor pertinent to the meaning of "bid alternate" was a sentence in an affidavit signed by its president. The sentence asserts, "Whenever bids are broken up into a base bid and various bid lots, those bid lots are considered bid alternates." The assertion is, at best, unclear with respect to *who* considers the bid lots to be "alternate bids" and in what context. Such an assertion cannot overcome an analysis based on the structure and expressed purpose of the statute.

In short, there was no genuine issue of material fact in district court, nor is there any ground to remand for further development of a record regarding industry usage of the term "bid alternate."

### III. CONCLUSION

For the above reasons, we affirm the district court's summary judgment in favor of Subcontractor.

**IT IS SO ORDERED.**

DONNELLY, BLACK, JJ., concur.