913 P.2d 659

**ROMERO EXCAVATION AND TRUCKING, INC., Plaintiff–Appellee,**

v.

**BRADLEY CONSTRUCTION, INC., Defendant–Appellant.**

No. 22714.

Supreme Court of New Mexico.

Feb. 20, 1996.

Rehearing Denied March 22, 1996.

Lester C. Cannain, Albuquerque, for Appellant.

Tibo Chavez, Jr., Belen, for Appellee.

## OPINION

FROST, Justice.

1. This interlocutory appeal addresses an issue of first impression in New Mexico: Whether a general contractor for a state construction project violated the New Mexico Subcontractors Fair Practices Act, NMSA 1978, §§ 13–4–31 to –42 (Repl.Pamp.1992) [1] [hereinafter the Act], when it substituted itself for the subcontractor listed in the bid submitted to the State. The district court found no material issues of fact in dispute and concluded as a matter of law that the general contractor, Defendant–Appellant Bradley Construction, Inc. (Bradley), violated the Act when it substituted itself for the subcontractor, Plaintiff–Appellee Romero Excavation and Trucking, Inc. (Romero). We conclude that Bradley's actions did violate the Act.

### I. FACTS

2. In 1991 New Mexico State University (NMSU) solicited bids to build a vocational student services building in Alamogordo. Bradley successfully bid for the general contract. Section 13–4–34(A) of the Act requires contractors to list for each subcontractor, the name, location, and nature of work to

---

1. This suit was filed before the legislature amended the Act in 1995. *See* 1995 N.M. Laws, ch. 82, §§ 1–8 (codified at NMSA 1978, §§ 13–4– 33 to –39, –41 (Cum.Supp.1995)). However, our holding in this case applies to the current as well as the previous versions of the Act.

be performed. Thus, in its bid to NMSU Bradley listed Romero as the subcontractor that would perform the earthwork on the project. Romero had submitted a subcontractor bid to Bradley for the earthwork, which conformed with the manner of excavation and fill Romero had performed for Bradley in the past on other projects. Bradley and Romero did not execute a written subcontract. After NMSU awarded Bradley the general contract, Bradley determined that the NMSU project would require a different, more costly method of excavation and fill. Bradley consequently decided to perform the earthwork itself. It notified NMSU in writing of its intention, but it never received a response from NMSU, nor did it obtain NMSU's affirmative approval of the change. Bradley nonetheless proceeded to perform the earthwork.

3. In 1992 Romero filed a civil complaint against Bradley, alleging both that Bradley had breached a contract with Romero and that Bradley had violated the Act. The parties filed stipulated facts and cross-motions for partial summary judgment on the issue of liability. The district court granted partial summary judgment for Romero. In February 1995 the district court certified for interlocutory appeal the question whether Bradley had violated the Act by substituting itself for Romero on the public works contract. We granted Bradley's application for appeal under the New Mexico provisions governing interlocutory appeals, NMSA 1978, § 39-3-4 (Repl.Pamp.1991) and SCRA 1986, 12-203 (Repl.Pamp.1992). We affirm.

## II. STANDARD OF REVIEW

 4. " 'Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' If the facts are undisputed and only a legal interpretation of the fact remains, summary judgment is the appropriate remedy." *Board of County Comm'rs v. Risk Management Div.*, 120 N.M. 178, 179, 899 P.2d 1132, 1133 (1995) (citation omitted) (quoting *Koenig v. Perez*, 104 N.M. 664, 665, 726 P.2d 341, 342 (1986)). In this case, partial summary judgment was proper because the facts regarding liability

were undisputed. The parties stipulated to the facts and, on review, are bound by the facts as stipulated. *See Haaland v. Baltzley*, 110 N.M. 585, 588, 798 P.2d 186, 189 (1990) ("Facts stipulated to are not reviewable on appeal.").

 5. Consequently, we review the trial court's decision to determine whether Romero was entitled to judgment as a matter of law. "The meaning of statutory language is a matter of law, not a question of fact." *Dynacon, Inc. v. D & S Contracting, Inc.*, 120 N.M. 170, 177, 899 P.2d 613, 620 (Ct.App. 1995) (interpreting the Act). We need not defer to the trial court's conclusions of law. *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 510, 817 P.2d 238, 244 (1991). Instead, we determine whether the trial court correctly applied the law to the facts of the case. *Sunwest Bank, N.A. v. Colucci*, 117 N.M. 373, 375, 872 P.2d 346, 348 (1994). We conclude that in this case the trial court was correct.

## III. INTERPRETATION OF THE ACT

 6. We first must interpret the Act to determine its meaning and underlying legislative intent. At the outset, we note, "When reviewing statutes, our primary goal is to give effect to the intent of the legislature." *Draper v. Mountain States Mut. Casualty Co.*, 116 N.M. 775, 777, 867 P.2d 1157, 1159 (1994). To this end, "[w]e examine the act in its entirety, construing each section in connection with every other section." *Id.*

7. The New Mexico Legislature enacted the Act in 1988. *See* 1988 N.M. Laws, ch. 18. In the Act, the legislature set out the following finding, which provides insight into the legislative intent:

The legislature finds that the practices of bid shopping and bid peddling in connection with the construction, alteration and repair of public works projects often result in poor quality of material and workmanship to the detriment of the public, deprive the public of the full benefits of fair competition among contractors and

subcontractors and lead to insolvencies and loss of wages to employees. Section 13–4–32.

8. Although the Act itself does not define the evils of bid shopping and bid peddling, the Court of Appeals, when interpreting the Act, explained:

> By requiring prime contractors who bid on a public works project to disclose the subcontractors they will use on the project, the Act restricts the practices known as bid shopping and bid peddling. "Bid shopping is the use of the low bid already received by the general contractor to pressure other subcontractors into submitting even lower bids. Bid peddling, conversely, is an attempt by a subcontractor to undercut known bids already submitted to the general contractor in order to procure the job."

*Dynacon,* 120 N.M. at 171, 899 P.2d at 614 (quoting *Southern Cal. Acoustics Co. v. C.V. Holder, Inc.,* 71 Cal.2d 719, 79 Cal.Rptr. 319, 325 n. 7, 456 P.2d 975, 981 n. 7 (Cal.1969) (en banc)); *see also Tekton, Inc. v. Builders Bid Serv., Inc.,* 676 F.2d 1352, 1353 n. 1 (10th Cir.1982) (defining bid shopping and bid peddling).

9. *Dynacon* is the only reported New Mexico case interpreting the Act. While its holding is not dispositive of this case, it does offer persuasive support for our holding. *Dynacon* concerned a school construction proposal that consisted of two different projects or "lots," each requiring separate bids. The school asked for bids on Bid Lot 1 alone and also for bids on Bid Lots 1 and 2 combined. Apparently the general contractor in *Dynacon* would have used a roofing subcontractor named Dynacon if it won both lots, but a different roofer named Frontier if it won only the first lot. However in its bid it listed only Dynacon. The general contractor was awarded Bid Lot 1 alone and sought to have Dynacon replaced by Frontier. *Dynacon,* 120 N.M. at 173, 899 P.2d at 616.

10. The Court of Appeals concluded that, under the Act, the general contractor could have listed both Frontier and Dynacon in its original bids and then specified that Dynacon would do the roofing if both lots were awarded and that Frontier would be the roofer if only the first lot were awarded. *Id.* at 174, 899 P.2d at 617 (discussing Section 13–4–34(A)(2)). However, the Court decided that the Act preludes the substitution of one subcontractor for another, after the bid is awarded, except under specific enumerated circumstances. *See* § 13–4–36(A). In other words, under the facts of *Dynacon,* Frontier could replace Dynacon only if both subcontractors were listed in the original bid; because only Dynacon was named, and because none of the enumerated circumstances applied, the contractor could only use Dynacon as its roofing subcontractor. *Dynacon,* 120 N.M. at 174–76, 899 P.2d at 617–19 (discussing Section 13–4–36(A)(5)). Thus *Dynacon* stands for the general principle, applicable in this case, that, once a bid has been awarded, a general contractor may not insert a substitute for a subcontractor except with using agency consent and for statutorily enumerated reasons.

■ 11. The Act requires "[a]ny person submitting a bid" to list "each subcontractor under subcontract to the contractor" who will work on the public works construction project. Section 13–4–34(A). Under the Act, " 'contractor' means the prime contractor on a public works construction project who contracts directly with the using agency," and " 'subcontractor' means a contractor who contracts directly with the contractor." Section 13–4–33(A), (B). The Act also provides, "The contractor shall list only one subcontractor for each category as defined by the contractor in his bid." Section 13–4–34(A). If a contractor does not list a subcontractor for a particular portion of the work, then the general contractor shall perform that work itself. Section 13–4–38. Thus, the Act prevents bid shopping and bid peddling by forcing the contractor to commit, when it submits its bid to the using agency, either to use a specified subcontractor or to perform the work itself. Under the Act, " 'using agency' means any state agency or local public body requiring services or construction." Section 13–4–33(E).

■ 12. The Act further prevents bid shopping and bid peddling by prohibiting the contractor from making subcontractor substi-

tutions after the using agency accepts the contractor's bid. Once the using agency accepts a contractor's bid, the Act requires that no contractor:

shall substitute any person as subcontractor in place of the subcontractor listed in the original bid, except that the using agency shall consent to the substitution of another person as a subcontractor in the following circumstances:

(1) when the subcontractor listed in the bid ... fails or refuses to execute a written contract ...;

(2) when the listed subcontractor becomes bankrupt or insolvent;

(3) when the listed subcontractor fails or refuses to perform his subcontract;

(4) when the contractor demonstrates ... that the name of the subcontractor was listed as the result of an inadvertent clerical error;

(5) when a bid alternate accepted by the using agency causes the original low subcontractor's bid not to be low;

(6) when the contractor can substantiate to the using agency that a listed subcontractor's bid is incomplete; or

(7) when the listed subcontractor fails or refuses to meet the bond requirements of the contractor.

Section 13–4–36(A). The Act goes on to state, "If after the award of the contract, the contractor subcontracts any portion of the work, except as provided in the Subcontractors Fair Practices Act, the contractor shall be guilty of violation of the Subcontractors Fair Practices Act...." Section 13–4–38.

■ 13. Bradley argues that we should read certain provisions of the Act as permitting a general contractor to substitute itself for a listed subcontractor after the using agency has accepted the general contractor's bid. Bradley asserts that Section 13–4–36, prohibiting substitution of "any person as subcontractor in place of the subcontractor listed in the original bid," does not apply to it because a "contractor" cannot also be a "subcontractor." *See* § 13–4–33(A), (B) (defining terms). However, this interpretation of the Act is contrary to the Act's overall purpose and its specific language. Although

a contractor when making a bid cannot by definition be a subcontractor, the Act specifically permits a general contractor to perform in a subcontractor capacity. *See* § 13–4–38 (permitting prime contractor to perform work of subcontractor). If we held otherwise, a general contractor could subvert the Act's purpose of protecting subcontractors. A contractor could, for example, incorporate a subcontractor's bid into its own bid and then take for itself the subcontractor's profit margin by performing the work in-house.

■ 14. Bradley also argues that, because Bradley and Romero had not executed a written contract at the time Bradley submitted its bid to NMSU, Romero was not "under subcontract" with Bradley as required by Section 13–4–34(A)(1). Bradley argues that it consequently was not obligated to list Romero in the bid, and Romero therefore cannot complain about Bradley's subsequent conduct. Once again, this interpretation is contrary to both the letter and spirit of the Act. The Act specifies that the contractor shall not substitute "the subcontractor *listed* in the original bid." Section 13–4–36(A) (emphasis added). Thus the Act focuses on whether the contractor *listed* a subcontractor, not whether the contractor and subcontractor had already entered into a written subcontract.

15. Bradley concedes that, as a practical matter, general contractors and subcontractors rarely, if ever, execute written contracts before general contractors submit their bids. *See* § 13–4–36(A)(1) (implicitly recognizing that contractor and subcontractor can execute written contract *after* agency accepts contractor's bid). In light of this industry practice, Bradley's interpretation would eviscerate the Act because there would be no reliable agreements between any of the parties listed in a bid. We decline to adopt an interpretation of the Act so contrary to its enunciated purpose. *See* § 13–4–32 (stating the legislative intent behind the Act, quoted above).

■ 16. Finally, Bradley argues that, even assuming the Act prohibited it from substituting itself for Romero without the approval of the using agency, it obtained

NMSU's approval and, consequently, did not violate the Act. We reject this argument. First, Bradley has not shown that the substitution properly fell within any of the seven enumerated exceptions permitting substitution with agency approval. *See* § 13–4–36(A) (listing the seven exceptions, quoted above). Second, Bradley did not obtain NMSU's approval. Bradley notified NMSU in writing that it intended to perform the earthwork itself, but it received no response from NMSU. Bradley argues that NMSU tacitly approved the substitution by permitting Bradley to proceed. However, the Act contemplates affirmative approval by the using agency. *See* § 13–4–36(B) ("Prior to approval of the contractor's request for such substitution, the using agency shall give notice in writing to the listed subcontractor of the contractor's request to substitute and of the reasons for such request."). Bradley was unjustified in relying on NMSU's silence, particularly since the substitution did not fall within the statutorily enumerated exceptions.[2] We conclude that, barring proper approval by the using agency, the Act does not permit a contractor to substitute itself for a listed subcontractor after the using agency accepts the contractor's bid.

■ 17. This conclusion is bolstered by similar laws in other jurisdictions. For example, many states have some form of statutory regulation limiting the substitution of subcontractors for public works projects. *See, e.g.,* Conn.Gen.Stat. § 4b–95(b), (c) (1995); Del.Code Ann. tit. 29, § 6911(3) (1991) (requiring written consent by agency to substitution); Nev.Rev.Stat. § 338.144(3) (1993) (forbidding substitution of subcontractor except in specified circumstances); S.C.Code Ann. § 11–35–3020(2)(b) (Law.Co-op.Cum.Supp.1995) (same). The language of New Mexico's Act closely tracks some of the language of the California Subletting and Subcontracting Fair Practices Act. Cal.Pub. Cont.Code §§ 4100–4114 (West Supp.1996) (originally enacted in 1941) [hereinafter the California Act]. Indeed, it is possible that New Mexico modeled its Act after the much older California Act. Consequently, California case law interpreting the California Act is persuasive authority for interpreting New Mexico's Act.

18. In *Fred J. Early, Jr., Co. v. County Sanitation District No. 2,* 214 Cal.App.2d 505, 29 Cal.Rptr. 633 (Dist.Ct.App.1963), the California District Court of Appeal addressed the issue in this case. The general contractor had substituted itself for the earthwork subcontractor listed in the bid, without the consent of the using agency. *Id.* at 634. The agency withheld a portion of the contract price from the contractor as a penalty for violating the California Act, and the contractor sued to recover the withheld amount. *Id.* The court held that the contractor violated the California Act, *id.* at 636, even though the California Act did "not state specifically whether a contractor may substitute [itself] for a subcontractor, identified in [the contractor's] bid, without the consent of the [using agency]," *id.* at 635. The court reached this conclusion by interpreting the statutory language to "best give effect to the purpose of the legislation." *Id.* Likewise, we conclude that Bradley's action violated New Mexico's Act, considering the Act's underlying legislative purpose to prevent bid shopping and bid peddling.

## IV. CONCLUSION

19. For the foregoing reasons we affirm the district court's grant of partial summary judgment for Romero on the issue of liability. We remand this case for further proceedings consistent with this opinion.

20. **IT IS SO ORDERED.**

FRANCHINI and MINZNER, JJ., concur.

---

**2.** We do not decide whether the using agency has the authority to approve a substitution that does not fall within the enumerated exceptions.