543 S.E.2d 572

**CLEMSON UNIVERSITY, Appellant,**

v.

**Michael SPETH, Respondent.**

No. 3302.

Court of Appeals of South Carolina.

Submitted Dec. 6, 2000.

Decided Feb. 20, 2001.

John R. Gentry, of Clemson, for appellant.

William N. Epps, Jr., of Epps & Stathakis, of Anderson, for respondent.

Amicus Curiae: Pete Cantrell, of Greenville, for Protection and Advocacy for People with Disabilities, Inc.

HUFF, Judge:

Clemson University appeals the order of the circuit court reversing Michael Speth's conviction in the Clemson University Municipal Court for unlawfully parking in a designated handicapped space and remanding the case for a new trial.[1] We reverse.

## FACTS

On October 4, 1998, Speth and two friends returned to Clemson University after a weekend away. Speth parked in a designated handicapped space. He and his friends removed some rather heavy items from the trunk of the car. The unloading took "less than a minute." Speth then reentered his car. Officer Ikenegbu, who had been dispatched to the area in response to a complaint about the handicapped parking situation, blocked Speth from leaving. Officer Ikenegbu took a picture of the car and issued Speth a ticket for unlawful parking in a designated handicapped space, in violation of South Carolina Code Ann. § 56–3–1970 (1991 & Supp.2000).[2]

[1.] Protection & Advocacy for People with Disabilities, Inc. filed an amicus curiae brief in support of reversing the decision of the circuit court.

[2.] "It is unlawful to park any vehicle in a parking place clearly designated for handicapped persons unless the vehicle bears the distinguishing license plate or placard provided in Section 56–3–1960."

Speth admitted that he saw the sign designating the parking place as a handicapped space.

Speth was tried by a jury in Clemson University Municipal Court. He was found guilty and fined.

Speth appealed to circuit court, arguing among other grounds the trial court erred in failing to charge the jury the definition of "park" as set forth in South Carolina Code Ann. § 56-5-610 (1991). This definition provides: "To 'park,' when prohibited, means the standing of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in loading or unloading." The circuit court found this definition of park was applicable to § 56-3-1970, which prohibits parking in a place clearly designated for handicapped persons unless the vehicle bears a license plate or placard authorizing the vehicle to park in such spaces. It granted Speth a new trial and directed the trial court on remand to charge the definition of "park" as set forth in § 56-5-610. Clemson University appealed.

## DISCUSSION

Clemson University argues the circuit court erred when it reversed Speth's conviction for violating § 56-3-1970 based upon the trial court's failure to charge § 56-5-610 to the jury. We agree.

▮ It is error for the trial court to refuse to give a requested instruction which states a sound principle of law when that principle applies to the case at hand, and the principle is not otherwise included in the charge. *Sanders v. Western Auto Supply Co.*, 256 S.C. 490, 497, 183 S.E.2d 321, 325 (1971). However, the trial court does not err in refusing to give a requested jury instruction where it does not state the correct law. *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998). Thus, we must determine whether § 56-5-610's definition of "park" is applicable to § 56-3-1970, which makes it unlawful to park an unauthorized vehicle in a parking place clearly designated for handicapped persons.

▮ The primary concern in interpreting a statute is to determine the intent of the legislature if it reasonably can be

discovered in the language when construed in the light of its intended purpose. *Ray Bell Constr. Co. v. School Dist. of Greenville County,* 331 S.C. 19, 501 S.E.2d 725 (1998); *Whitner v. State,* 328 S.C. 1, 492 S.E.2d 777 (1997). The goal of statutory construction is to harmonize statutes whenever possible and to prevent an interpretation that would lead to a result that is plainly absurd. *Hodges v. Rainey,* 341 S.C. 79, 533 S.E.2d 578 (2000).

> However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature or would defeat the plain legislative intention. If possible, the court will construe the statute so as to escape the absurdity and carry the intention into effect.

*Ray Bell Constr. Co.,* 331 S.C. at 26, 501 S.E.2d at 729 (quoting *Kiriakides v. United Artists Communications, Inc.,* 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994)).

Section 56–5–610 is part of the Uniform Act Regulating Traffic on Highways. The provisions of this Act "refer exclusively to the operation of vehicles upon the highways, except: (1) When a different place is specifically referred to in a given section; and (2) That the provisions of Articles 9 and 23 shall apply upon highways and elsewhere throughout the State." S.C.Code Ann. § 56–5–20 (1991). Article 3 sets forth the definitions as applicable to the Act. S.C.Code Ann. § 56–5–110 (1991) (*"For the purposes of this chapter* the words, phrases and terms defined in this article shall have the meanings thereby attributed to them."). (emphasis added).

■ The Uniform Act Regulating Traffic on Highways, while stating no person shall park in specified areas[3], allows for temporary parking for loading and unloading. We find no indication the Legislature intended the Act's definition of the word "park" as set forth in § 56–5–610 to apply to statutes

---

3. *See e.g.,* S.C.Code Ann. §§ 56–5–2510 (Supp.2000); S.C.Code Ann. § 56–5–2530 (1991 & Supp.2000); S.C.Code Ann. § 56–5–2540 (Supp. 2000).

outside of the Act. Furthermore, we find the Legislature could not possibly have intended the Act's definition of "park" to apply to § 56–3–1970. In providing for designated handicapped parking places, the Legislature recognized the need of people with disabilities for special parking privileges.[4] These designated spaces are exclusively for the use of people with disabilities. If the Act's definition of "park" applied, ablebodied drivers would be allowed to use designated handicapped parking spaces "temporarily for the purpose of and while actually engaged in loading or unloading." Such an interpretation would defeat the plain legislative intention of providing parking places exclusively for the use of people with disabilities. Accordingly, we hold the definition of "park" as set forth in § 56–5–610 does not apply to § 56–3–1970. The trial court did not err in refusing Speth's request to charge the jury with this definition of the word "park." The order of the circuit court granting Speth a new trial is reversed and Speth's conviction in the Clemson University Municipal Court for violating § 56–3–1970 is reinstated.

**REVERSED.**

HOWARD and SHULER, JJ., concur.

---

4. The amicus curiae brief explained the importance of handicapped parking:

> These parking spaces make it possible for people with many types of disabilities to visit stores, offices, government buildings, and (as shown in this case) schools. People who use wheelchairs often cannot exit their cars in crowded parking lots without a clear aisle beside the parking space. The aisle makes it possible for wheelchair lifts to descend from specially equipped vans. For those individuals without lifts, the aisles allow them to safely transfer into their wheelchair and roll out from beside their vehicle. People with disabilities who do not use wheelchairs may be unable to reach public buildings unless they are able to park close to the entrance. Heart conditions, emphysema, and multiple sclerosis are a few of the conditions that may make walking more than a very short distance impossible. Because of this limitation on their mobility a parking space close to the entrance may be the only way they are able to enter a public building independently.